**Tyrone Blackburn, ESQ**
**Attorney NYS-ID # 232602020**
**1242 East 80th Street, 3rd Floor**
**Brooklyn, NY 11236**
**(347) 342-7432**
*Attorney for Plaintiff Queen Miller*

| | |
|---|---|
| QUEEN MILLER<br><br>      Plaintiffs,<br><br><br>  -against<br><br><br>JOHNSON C. SMITH UNIVERSITY, INC.,<br>UPWARD BOUND,<br>MICHAEL GARDNER,<br>MAGDALYN LOWE-SMITH,<br>MICHAEL J. PETERSON,<br>TREVA NORMAN,<br>KATHLEEN JACKSON,<br>DOROTHY COWSER YANCY<br>JOHN and JANE DOES 1-10 and<br>ABC CORPS. 1-10<br><br>       Defendants. | **UNITED STATES DISTRICT COURT**<br>**DISTRICT OF NEW JERSEY**<br><br><br>Civil Action No. 21-cv-15313<br><br>COMPLAINT AND JURY DEMANDED |

   Plaintiff's, Queen Miller ("Plaintiff Queen Miller" or "Plaintiff") by and through her undersigned counsel, hereby brings a series of claims against Defendants, Johnson C. Smith University, Inc. ("JCSU"), Upward Bound ("UB"), Michael J. Peterson ("Defendant Peterson"), Michael Gardner ("Defendant Gardner"), Magdalyn Lowe-Smith ("Defendant Lowe-Smith"), Dorothy Cowser Yancy ("Defendant Yancy"), Kathleen Jackson ("Defendant Jackson"), Treva Norman ("Defendant Norman"), John and Jane Doe's 1-10 and ABC Corps. 1-10 (hereinafter collectively referred to as "Defendants"), of which the following is a statement:

1. This is a civil action brought under New Jersey P.L. 2019, c.120 (S477 SCS) (The Act) for child sexual abuse under N.J. C.2A:14-2B, effective December 1, 2019. Under the Act, Plaintiff's claims, which would otherwise have been time-barred as it existed before the Act's enactment, are revived.

2. This is a civil action brought under New York's Child Victims Act ("CVA"), CPLR 214-g, to recover damages against defendants for alleged sexual contact, as defined by Article §130.00 of the New York Penal Code, with Plaintiff when she was a **15-year-old** minor. Under the Act, Plaintiff's claims, which would otherwise have been time-barred as it existed before the Act's enactment, are revived.

3. When Plaintiff was a 15-year-old minor in high school, she was sexually assaulted by Michael J. Peterson, a counselor with the summer Upward Bound program at Johnson C. Smith University. At the time of his sexual assault of Plaintiff Miller, Defendant Peterson was approximately thirty-five years old, while Plaintiff Miller was fifteen years old.

### N.J. C.2A:14-2B: COMMENCEMENT OF ACTIONS REGARDLESS OF STATUTE OF LIMITATIONS

4. Each of Ms. Miller's causes of action is timely under New Jersey Statute C.2A:14-2B[1], which was enacted on May 13, 2019, and went into effect on December 1, 2019. Ms. Miller alleges that Peterson committed intentional acts which resulted in Ms. Miller suffering physical, psychological, or other injuries or conditions as a direct and proximate result of conduct which constitutes a sexual offense committed against her person, as defined in Section 1 of P.L. 1992, c. 109, as amended on May 13, 2019[2].

---

[1] https://trackbill.com/bill/new-jersey-senate-bill-477-extends-statute-of-limitations-in-civil-actions-for-sexual-abuse-claims-expands-categories-of-potential-defendants-in-civil-actions-creates-two-year-window-for-parties-to-bring-previously-time-barred-actions-based-on-sexual-abuse/1530372/

[2] Under New Jersey P.L. 2019, c.120 (S477 SCS), effective December 1, 2019, the statute of limitations for the claims detailed in this Complaint is seven years, with a two-year look back.

In relevant part, Section 2A:14-2b(1) states, every action at law for an injury resulting from the commission of a sexual assault or any other crime of a sexual nature against a person 18 years of age or older that occurred before, on, or after **the effective date of P.L.2019**, c.120 (C2A:14-2a et al.) shall be commenced **within seven years** from the date of reasonable discovery of the injury and its causal relationship to the act.

Furthermore, Section 2A:14-2b-a states, **notwithstanding the statute of limitations provisions of N.J.S.2A:14-2**, section 2 of P.L.2019, c.120 (C2A:14-2a) section 1 of P.L. 1964, c.214 (C2A:14-2.1), or any other statute, an action at law for an injury resulting from the commission of the sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c.7 (C2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c.109 (C2A:61B-1), that occurred before the effective date of P.L.2019, c.120 (C2A:14-2a et al.), and which action would otherwise be barred through the application of the statute of limitations, **may be commenced within two years immediately following the effective date.**

Additionally, Section C.2A:14-2b, titled "**Commencement of actions regardless of the statute of limitations,**" states a follow:

a. **Notwithstanding the statute of limitations provisions of N.J.S.2A:14-2**, section 2 of P.L.2019, c.120 (C2A:14-2a), section 1 of P.L.1964, c.214 (C2A:14-2.1), **or any other statute, an action at law for an injury resulting from the commission of the sexual assault, any other crime of a sexual nature**, a prohibited sexual act as

5. This action was not filed until after the effective date of December 1, 2019.

### PUBLIC POLICY IMPLICATIONS OF N.J.S.2A:14-2
### TWO (2) YEAR "FILING WINDOW"

6. On March 7, 2019, New Jersey Senate Judiciary Committee issued the following statement regarding Senate Bill No. 477 (N.J.S.2A:14-2):

> "The Senate Judiciary Committee reports favorably a Senate Committee Substitute for Senate Bill No. 477. This substitute bill *would extend the statute of limitations in civil actions for sexual abuse claims*, as well as *create a two-year window for parties to bring <u>previously time-barred</u> actions based on sexual abuse*. The bill would also expand the categories of potential defendants in civil actions, and for some actions permit retroactive application of standards of liability to past acts of abuse for which liability did not previously exist. The following section-by-section summary of the bill's provisions further details its scope and application to lawsuits which could be filed beginning on December 1, 2019, the bill's effective date."

7. On March 26, 2019, New Jersey Senate issued the following synopsis in Senate Committee Substitute for Senate, No. 477:

> "Extends statute of limitations in civil actions for sexual abuse claims; expands categories of potential defendants in civil actions; creates two-year window for parties to bring previously time-barred actions based on sexual abuse."

8. On May 13, 2019, New Jersey Governor Philip D. Murphy said the following:

> "Today I am signing Senate Committee Substitute for Senate Bill No. 477. Which significantly extends the statute of limitations for sexual abuse claims and creates a two-year filing window for sexual abuse claims that would otherwise be time-barred by the statute of limitations that goes into effect upon the bill's enactment… I cannot deny victims the ability to seek redress in Court for sexual abuse that often

---

defined in section 2 of P.L.1992, c.7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1), **that occurred before the effective date of P.L.2019**, c.120 (C.2A:14-2a et al.), **and which action would otherwise be barred through the application of the statute of limitations**, <u>**may be commenced within two years immediately following the effective date**</u>.

b.   defined in section 1 of P.L.1992, c.109 (C.2A:61B-1) against either a minor under 18 or a person 18 years of age or older.

Finally, Section C.2A:14-2c, titled "<u>**Effective date**</u>,"
**The provisions of this amendatory and supplementary act, P.L.2019, c.120 (C.2A:14-2a et al.), shall take effect on December 1, 2019**. These provisions shall be inapplicable to any civil action governed solely by the statute of limitations of another jurisdiction.

leaves trauma lasting a lifetime. I am confident that our judicial system is the right forum to assess these claims fairly and impartially."

## TIMELINESS UNDER THE CHILD VICTIMS ACT[3]

9. This action is timely because it falls within CPLR 214-g and is brought during the period outlined in that section. The claims brought herein allege intentional and negligent acts and omissions for physical, psychological, and other injury suffered because of conduct that would constitute sexual offenses as defined in Article 130 of the New York Penal Law, and such acts and omissions were committed against Ms. Miller when she was less than eighteen years of age.

---

[3] The opening paragraph of section 208 of the civil practice law and rules is designated subdivision (a), and a new subdivision (b) is added to read as follows:

(b) Notwithstanding any provision of law which imposes a period of limitation to the contrary and the provisions of any other law pertaining to the filing of a notice of claim or a notice of intention to file a claim as a condition precedent to commencement of an action or particular proceeding, with respect to all civil claims or causes of action brought by any person for physical, psychological or other injury or condition suffered by such person as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against such person who was less than eighteen years of age, or the use of such person in a sexual performance as defined in section 263.05 of the penal law, or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against such person who was less than eighteen years of age, such action may be commenced, against any party whose intentional or negligent acts or omissions are alleged to have resulted in the commission of said conduct, on or before the Plaintiff or infant plaintiff reaches the age of fifty-five years. In any such claim or action, in addition to any other defense and an affirmative defense that may be available in accordance with the law, rule, or the common law, to the extent that the acts alleged in such action are of the type described in subdivision one of section 130.30 of the penal law or subdivision one of section 130.45 of the penal law, the affirmative defenses set forth, respectively, in the closing paragraph of such sections of the penal law shall apply.

The civil practice law and rules are amended by adding a new section 214-g to read: § 214-g. Certain child sexual abuse cases. Notwithstanding any provision of law which imposes a period of limitation to the contrary and the provisions of any other law pertaining to the filing of a notice of claim or a notice of intention to file a claim as a condition precedent to commencement of an action or special proceeding, every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against a child less than eighteen years of age, or the use of a child in a sexual performance as defined in section 263.05 of the penal law, or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against a child less than eighteen years of age, which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the Plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than one year and six months after the effective date of this section. In any such claim or action: (a) in addition to any other defense and an affirmative defense that may be available in accordance with the law, rule, or the common law, to the extent that the acts alleged in such action are of the type described in subdivision one of section 130.30 of the penal law or subdivision one of section 130.45 of the penal law, the affirmative defenses set forth, respectively, in the closing paragraph of such sections of the penal law shall apply; and (b) dismissal of a previous action, ordered before the effective date of this section, on the grounds that such previous action was time-barred, and for the failure of a party to file a notice of claim or a notice of intention to file a claim, shall not be grounds for dismissal of a revival action under this section.

10. Specifically, the conduct that gives rise to Ms. Miller's claims herein would constitute a violation of, among other things, New York Penal Law, 130.35 (rape in the first degree), 130.52 (forcible touching) (collectively, the "Child Sex Crimes").

## PARTIES, JURISDICTION, AND VENUE

11. Plaintiff Queen Miller is an adult female and citizen of North Carolina.

12. Defendant Johnson C. Smith University, Inc. is a non-profit corporation organized under the laws of North Carolina, with its principal place of business located in Charlotte, North Carolina.

13. Defendant Upward Bound, Inc. is a Virginia corporation.

14. Defendant Peterson is an individual who served as a Counselor of the Upward Bound Program. Defendant Peterson is a current resident of North Carolina.

15. Defendant Gardner is an individual who served as the Director of Upward Bound from 1998 through 1999 when Defendant Peterson was allowed to rape Ms. Miller. To cover up Defendant Peterson's actions, Defendant Gardner failed to inform Celeste Miller about her daughter Queen Millers' rape when Defendant Gardner discovered it or should have discovered it in 1998 through 1999. Defendant Gardner is currently a counselor at Upward Bound at Lincoln University in Pennsylvania. Upon information and belief, Defendant Gardner is a resident of the state of Pennsylvania.

16. Defendant Lowe-Smith is an individual who serves as the current Director of the Upward Bound program at JCSU. Defendant Lowe-Smith has been an employee of the Upward Bound Program at JCSU since January 1997 and was in her position when Ms. Miller was a student in the Upward Bound Program JCSU. Defendant Lowe-Smith knew that fifteen-year-old Plaintiff Queen Miller was accosted by an adult male when the Upward Bound Program visited NYC during the summer of 1998. Defendant Lowe-Smith failed to report this discovery to Celeste Miller. Upon information and belief, Defendant Lowe-Smith was responsible for the hiring and retention of Defendant Peterson.

17. Defendant Norman is an individual who serves as Vice President for Student Affairs for JSCU and was in her position when Plaintiff Queen Miller was a student in the Upward Bound Program JCSU. To cover up Defendant Peterson's actions, Defendant Norman failed to inform Celeste Miller about her daughter Queen Millers' rape when Defendant Norman discovered it or should have discovered it in 1998 through 1999. Upon information

and belief, Defendant Norman recommended the termination of Defendant Peterson. Upon information and belief, Defendant Norman is a resident of the state of North Carolina.

18. Defendant Cowser Yancy is an individual who served as President of JSCU and was in her position when Plaintiff Queen Miller was a student in the Upward Bound Program-JCSU. To cover up Defendant Peterson's actions, Defendant Cowser Yancy failed to inform Celeste Miller about her daughter Queen Millers' rape when Defendant Cowser Yancy discovered it or should have discovered it in 1998 through 1999. Upon information and belief, Defendant Cowser Yancy authored the termination letter and executed the termination of Defendant Peterson. Upon information and belief, Defendant Cowser Yancy is a resident of the state of North Carolina.

19. Defendant Jackson is an individual who served as Academic Coordinator for Upward Bound – JSCU and was in her position when Plaintiff Queen Miller was a student in the Upward Bound Program – JCSU. To cover up Defendant Peterson's actions, Defendant Jackson failed to inform Celeste Miller about her daughter Queen Millers' rape when Defendant Jackson discovered it or should have discovered it in 1998 through 1999. Upon information and belief, Defendant Jackson is a resident of the state of North Carolina.

20. During the relevant time, Defendants John and Jane Does 1-10 are currently unknown individuals and employees who aided and abetted in the commission of conduct complained of herein and who either acted within the scope of their employment, Defendants ratified, embraced, and added to this conduct. As parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual employees by name.

21. During the relevant period, Defendants ABC Corps. 1-10 are currently unknown entities who employed Plaintiff or aided and abetted in the commission of conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities or individuals by name.

## **Background**

22. At all relevant times, JCSU was a host institution for the Upward Bound program. According to the United States Department of Education website[4],

---

[4] https://www2.ed.gov/programs/trioupbound/index.html

"Upward Bound provides fundamental support to participants in their preparation for college entrance. The program provides opportunities for participants to succeed in their precollege performance and ultimately in their higher education pursuits. Upward Bound serves high school students from low-income families; and high school students from families in which neither parent holds a bachelor's degree. The goal of Upward Bound is to increase the rate at which participants complete secondary education and enroll in and graduate from institutions of postsecondary education."

23. The programs operated by Upward Bound include a summer institute, which is a residential program designed to simulate the college experience and prepare participants for the college environment. Upward Bound conducted such a summer program at JCSU. The program's participants resided in JCSU's dormitories and hotels whenever the program would take the students on overnight trips.

24. In the Spring of 1998, Plaintiff Queen Miller was 14.5 years old. At that time, she was first enrolled in Upward Bound and was preparing to begin the summer program. During the summer of 1998, Plaintiff Queen Miller resided in a JCSU dormitory designated for Upward Bound student participants.

25. Also, at that time, Defendant Peterson was a program counselor responsible for the Upward Bound program on-site at JCSU and was responsible for student schedules.

26. Defendant Peterson was an employee or agent of JCSU and subject to JCSU's control at all relevant times.

27. At all relevant times, Defendant Peterson was an employee or agent of Upward Bound and subject to Upward Bound's control.

28. Also, at that time, Defendant Lowe-Smith was an administrator responsible for the Upward Bound program at JCSU.

29. At all relevant times, Defendant Lowe-Smith was an employee or agent of JCSU and subject to JCSU's control.

30. At all relevant times, Defendant Lowe-Smith was an employee or agent of Upward Bound and subject to Upward Bound's control.

31. Also, at that time, Defendant Gardner was an administrator responsible for the Upward Bound program at JCSU.

32. Defendant Gardner was an employee or agent of JCSU and subject to JCSU's control at all relevant times.

33. At all relevant times, Defendant Gardner was an employee or agent of Upward Bound and subject to Upward Bound's control.

34. Also, at that time, Defendant Norman was an administrator responsible for the Upward Bound program at JCSU.

35. Defendant Norman was an employee or agent of JCSU and subject to JCSU's control at all relevant times.

36. At all relevant times, Defendant Norman was an employee or agent of Upward Bound and subject to Upward Bound's control.

37. Also, at that time, Defendant Jackson was an administrator responsible for the Upward Bound program at JCSU.

38. Defendant Jackson was an employee or agent of JCSU and subject to JCSU's control at all relevant times.

39. At all relevant times, Defendant Jackson was an employee or agent of Upward Bound and subject to Upward Bound's control.

40. Also, at that time, Defendant Cowser Yancy was an administrator responsible for the Upward Bound program at JCSU.

41. At all relevant times, Defendant Cowser Yancy was an employee or agent of JCSU and subject to JCSU's control.

42. At all relevant times, Defendant Cowser Yancy was an employee or agent of Upward Bound and subject to Upward Bound's control.

43. This action is for damages more than $20 million, well more than the Court's jurisdictional minimum of $75,000.00.

44. The Court has venue over this action as it arose in New York, New York, and Clifton, New Jersey, in Passaic County.


## **NATURE OF ACTION**
### **DUTY**

45. JCSU was in a special relationship with Plaintiff Queen Miller of school-student or residential custodian -minor child at all material times. Based on this special relationship,

JCSU owed Plaintiff Queen Miller a duty of reasonable care to protect her from foreseeable harm.

46. JCSU was in a special relationship with Celeste Miller of custodian-trustee, to Celeste Miller's minor child at all material times. Based on this special relationship, JCSU owed Celeste Miller a duty of reasonable care to protect her fifteen-year-old minor daughter, Plaintiff Queen Miller, from foreseeable harm.

47. At all relevant times, JCSU and individual Defendants were in a special relationship of employer-employee, such that JCSU owed a duty to control the actions or inactions of individual Defendants to prevent foreseeable harm to Plaintiff Queen Miller.

48. At all relevant times, Upward Bound and individual Defendants were in the special relationship of employer-employee. Upward Bound owed a duty to control the actions or inactions of the individual Defendants to prevent foreseeable harm to Plaintiff Queen Miller.

49. At all relevant times, Upward Bound and Plaintiff Queen Miller were in the special relationship of school -the student or residential custodian -minor child. Upward Bound owed Plaintiff Queen Miller a duty to protect her from foreseeable harm.

50. JCSU and Upward Bound each owed a duty to Plaintiff Queen Miller to use reasonable care to protect her safety, care, well-being, and health. At the same time, she was in JCSU's care, participating in an activity sponsored or sanctioned by Defendants, enrolled in the Upward Bound summer program, or under the authority or supervision of Peterson in the program. Defendant's JCSU and Upward Bound failed Plaintiff Queen Miller by deliberately covering up Defendant Peterson's rape of Plaintiff Queen Miller.

51. Celeste Miller placed her fifteen-year-old daughter, Queen Miller, in JCSU's and Upward Bound's care with the understanding that each organization would responsibly exercise their duty to act in loco parentis or as a reasonable parent would under the circumstances. Defendant's JCSU and Upward Bound failed Celeste Miller by deliberately covering up Defendant Petersons' rape of fifteen-year-old Queen Miller.

52. In their self-interested effort to save face and to escape responsibility, Defendants Gardner, Lowe-Smith, Yancy, Jackson, and Norman acted in concert to conceal Defendant Peterson's actions during the New York/ New Jersey trip where Defendant Peterson

groomed fifteen-year-old Plaintiff Queen Miller and orally, vaginally, and anally penetrated her with his erected penis.

53. JCSU and Upward Bound each owed Plaintiff Queen Miller a duty to warn and make disclosure of foreseeable dangers or harms, including the danger posed to her by a sexual predator in the program.

54. After discovering the actions of Defendant Peterson, Defendants JCSU, Upward Bound, Gardner, Lowe-Smith, Yancy, Jackson, and Norman each owed Plaintiff Queen Miller a duty to ensure that she received the appropriate medical attention due a fifteen-year-old rape victim. The named Defendants failed to provide Plaintiff Queen Miller with medical attention.

55. After discovering the actions of Defendant Peterson, Defendants JCSU, Upward Bound, Gardner, Lowe-Smith, Yancy, Jackson, and Norman each owed Celeste Miller a duty to ensure that she was aware of the harm visited upon her daughter by Defendant Peterson. Defendant's duty to Celeste Miller was to ensure that Celeste Miller could exercise her duty as a mother to protect and properly care for her fifteen-year-old daughter Plaintiff Queen Miller after discovering that her daughter may have been a victim of sexual assault. A part of that protection and care is ensuring that Plaintiff Queen Miller received the appropriate medical attention when the rape was discovered or should have been discovered. The named Defendants failed to provide Celeste Miller with the required notice.

56. JCSU and Upward Bound each owed Plaintiff a duty not to employ in a position with access to children a depraved person like Defendant Peterson. He was incompetent for his position as a counselor, where Defendants knew or had reason to know of his incompetency.

57. JCSU and Upward Bound each owed Plaintiff Queen Miller a duty not to employ in various positions of power with access to children individual defendants Gardner, Lowe-Smith, Yancy, Jackson, and Norman. Five individuals void of empathy, morals, basic intelligence, and a sense of selflessness. Defendant JCSU and Upward Bound knew or had reason to know the five named defendants would be woefully inept at exercising their duties as mandatory reporters, setting aside their self-interests to do the right thing and report the behavior of Defendant Peterson to Celeste Miller.

58. JCSU and Upward Bound each owed a duty to exercise reasonable care in the hiring, retention, and supervision of individual Defendants, especially Defendant Peterson.

## DEFENDANT PETERSON GROOMED AND GROPED PLAINTIFF QUEEN MILLER IN NYC

59. Plaintiff Queen Miller moved into a dormitory at JCSU for summer 1998 Upward Bound program when she was 15 years old. She lived in the campus dormitory with other students in the program.

60. Approximately two months after the start of the summer program, Defendants JCSU and Upward Bound took Plaintiff Queen Miller and the other program participants on a weeklong overnight trip to New York City. The week in question was July 19, 1998, to July 26, 1998.

61. During the trip to New York, the participants were treated to trips to Harlem, New York, tours of NYC, and an opportunity to go shopping. Upon information and belief, the participants stayed in a hotel in Clifton, New Jersey.

62. During the participant's time in NYC and New Jersey, Defendant Peterson groomed Plaintiff Queen Miller by treating her differently than the other participants on the trip. Defendant Peterson purchased Plaintiff Queen Miller items during the shopping portion of the trip that other participants were not privy to. Additionally, while in New York, Defendant Peterson made Plaintiff Queen Miller sit next to him on the bus where he would fondle her and touch her private parts.

63. The acts and conduct of Defendant Peterson were criminal under New York law, including, without limitation, acts in violation of New York Penal Law, 130.35 (rape in the first degree), 130.52 (forcible touching) (collectively, the "Child Sex Crimes").

## DEFENDANT PETERSON INSERTED HIS ERECT UNPROTECTED PENIS INTO THE MOUTH, VAGINA, AND ANUS OF FIFTEEN-YEAR-OLD PLAINTIFF QUEEN MILLER

64. Subsequently, at night when the participants returned to their hotel in New Jersey, Defendant Peterson would call Plaintiff's hotel room phone and have her come to his hotel room. Once Plaintiff Queen Miller arrived at Defendant Peterson's hotel room, he sexually assaulted Plaintiff.

65. While in New Jersey, Defendant Petersons sick, sadistic depravity knew no bounds. He forced a fifteen-year-old Plaintiff, Queen Miller, to perform oral sex on his erect penis.

66. While in New Jersey, Defendant Peterson forced fifteen-year-old Plaintiff Queen Miller to endure unprotected vaginal penetration from his erected penis.

67. While in New Jersey, Defendant Peterson forced fifteen-year-old Plaintiff Queen Miller to endure unprotected anal penetration from his erected penis.

68. Defendant Peterson sexually assaulted Plaintiff Queen Miller in the same manner, every day for the six days of this New York, New Jersey trip. After her last sexual assault encounter with Defendant Peterson, Plaintiff Queen Miller recalls running down the hall and finding one of the program counselors, who brought Plaintiff to her room.

69. The acts and conduct of Peterson were criminal under New Jersey law, including, without limitation, acts in violation of N.J.S.2C:14-1.

70. Defendant Peterson sexually assaulted Plaintiff Queen Miller in the same manner on at least eight occasions spanning the duration of her limited time in the Upward Bound Program.

71. Plaintiff reported Peterson's sexual assaults to police officials in Charlotte, North Carolina, in 2018 and Clifton, New Jersey, in 2021. During a controlled telephone call between Plaintiff Queen Miller and Rapist Peterson monitored by the Charlotte Mecklenburg police, Rapist Peterson admitted to sexual contact with female students, claiming that he had a "good sickness." Rapist Peterson even went so far as to ask Plaintiff Queen Miller to send him an updated photo of herself.

## THE CONTROLLED CALL

72. During the controlled call, Defendant Peterson acknowledges their age difference at the time that he raped Plaintiff Queen Miller:

> "I introduced myself to you, and I probably was wrong because of the age difference and stuff, but I just couldn't-- It was past magical. It was like, "Oh my God." And it wasn't just because of of your beauty, it was just your personality, your, your aura, it was just-- I just thought you were an extremely polished woman. Then, I think the first thing I asked you was, "Are you a model?" I think I asked you that."

73. During the controlled call, Defendant Peterson reminisces on the days he raped fifteen-year-old Plaintiff Queen Miller. He then expresses how he still misses the experience:

> "It's almost like you've got this, I don't want to say crazy love, but you've got this-- I don't know, it's almost like a good sickness, you know? It's like a good sickness like you want to have it, and you never dismiss it because it could be just from past experiences or just even future endeavors. I'm like, Keisha, "Keisha Miller, oh my God."

74. During the controlled call, when discussing his sexual intercourse with fifteen-year-old Plaintiff Queen Miller, Defendant Peterson said the following:

> "I really enjoyed cumming in you and everything."

75. During the controlled call, when discussing the sexual acts Defendant Peterson required fifteen-year-old Plaintiff, Queen Miller, to do, Defendant Peterson said:

> "You got me playing with myself right now."

76. During the controlled call, Defendant Peterson insisted on having Plaintiff Queens Miller send a current photo of himself. In addition to requesting a current photo, Defendant Peterson expressed how he enjoyed giving oral sex to fifteen-year-old Plaintiff Queen Miller and lamented on how he wished he could give her oral sex now:

> "I'd like to eat your pu$$y right now."

**NOTICE- FORESEEABILITY**

77. At all relevant times, Peterson's flirtatiousness and sexual harassment of female students in the program were open and notorious. It was well known to students, administrators, and staff of Upward Bound at JCSU.

78. At least one student advised a staff person/administrator in the program that Peterson's acts and conduct with female students, mainly Plaintiff, needed to be examined or investigated. No responsive action was taken, and Peterson sexually assaulted Plaintiff during subsequent trips to Atlanta, Georgia, and Virginia.

79. At all relevant times, Peterson was incompetent to perform his duties in the Upward Bound program at JCSU because of the danger of sexual assault or abuse he posed to female students.

80. At all relevant times, the Defendants knew or in the exercise of reasonable care should have known Peterson had a propensity for the conduct which caused injury to Plaintiff, mainly that he had a propensity to engage in the sexual abuse of children.

81. It was reasonably foreseeable to the Defendants that Peterson would commit acts of sexual abuse or assault on a child at all relevant times.

82. At all relevant times, the Defendants knew or should have known that Peterson was unfit, dangerous, and a threat to the health, safety, and welfare of the minors entrusted to his counsel, care, and protection in the Upward Bound program.

83. The Defendants provided Peterson unfettered and unsupervised access to Plaintiff on campus and on school-sponsored trips with such actual or constructive knowledge. Defendants thus allowed Peterson to commit foreseeable acts of child sexual abuse or assault.

## BREACH AND CAUSATION

84. Upon information and belief, during the time Plaintiff was being sexually assaulted by Peterson, Upward Bound and JCSU each knew or had reason to know that Peterson posed a foreseeable risk of sexual assault or abuse to children with whom he would have contact in his duties and activities as Counselor of the Upward Bound program at JCSU.

85. Defendants breached their duties to Plaintiff by hiring, retaining and failing to supervise an administrator, Peterson, who was incompetent in his authority and control over children, where Defendants knew or had reason to know that Peterson was incompetent by reason of the foreseeable risk, he presented of child sexual assault or abuse.

86. In knowing or having reason to know of the risk presented by Peterson as Counselor of the Upward Bound program at JCSU, Defendants each breached their duties by (i) hiring and assigning Peterson as an administrator, where he would have access to, and authority and control over, children; (ii) retaining Peterson in his position as Counselor with unfettered access to and authority over students; (iii) failing to adequately supervise Peterson, providing him with the opportunity to groom and sexually molest students; (iv) failing to provide any warning or notice of Peterson's perverse sexual proclivities to the parents or guardians of students in the Upward Bound program; and (v) failing to protect Plaintiff from foreseeable sexual abuse by an agent and employee, Peterson.

87. At all relevant times, Upward Bound and JCSU had inadequate policies and procedures to protect children from a sexual predator in the program.

88. As a direct and proximate cause of the foregoing breaches of duty, Peterson sexually assaulted Plaintiff in New York and New Jersey.

**INDIVIDUAL DEFENDANTS TREVA NORMAN, KATHLEEN JACKSON, DOROTHY COWSER YANCY, MICHAEL GARDNER, MAGDALYN LOWE-SMITH**

89. As early as July 26, 1998, individual Defendants Treva Norman, Michael Garnder, and Magdalyn Lowe-Smith identified a mandatory reportable incident during the New York, New Jersey trip and negligently failed to report it to Celeste Miller or the authorities.

90. As late as April 13, 1999, individual Defendants Kathleen Jackson, Dorothy Cowser Yancy, Treva Norman, and Michael Gardner were aware of a mandatory reportable incident during a trip to Atlanta, where Plaintiff was seen running out of Mr. Peterson's hotel room half naked after being brutally raped. Individual Defendants negligently failed to report this incident to Celeste Miller or the authorities.

91. Upon information and belief, in their roles as administrators, individual Defendants never trained or oriented Plaintiff Queen Miller about the appropriate course to take if an incident of sexual assault, grooming, or touching occurred.

92. Upon information and belief, in their roles as administrators, individual Defendants did not implement a dual supervision policy to ensure the safety of their vulnerable teenage students as they traveled and slept away from their parents during these overnight trips.

93. Upon information and belief, in their roles as administrators, individual Defendants never once called the police or ensured that Plaintiff Queen Miller received the appropriate healthcare discovering that Defendant Peterson had raped her.

94. As a result of individual Defendants' gross negligence, Defendant Peterson's continuous rapes of Plaintiff Queen Miller resulted in a later terminated pregnancy.

95. In April of 1999, after Defendant Peterson exited his employment at JCSU, individual Defendants informed the Employment Security Commission of North Carolina that Defendant Peterson was released of his duties due to his use of "poor judgment in the supervision of students." Defendant Peterson maintained that he "committed no wrong," and individual Defendant failed to follow-up and inform the commission that Defendant Peterson was terminated because he raped a fifteen-year-old girl.

## Count I
### Sexual Assault
### (New York, New Jersey)
### (Plaintiff Queen Miller against Defendant Peterson)

96. Plaintiff Queen Miller repeats and realleges each allegation set forth above as if fully set forth herein.

97. Defendant Peterson did sexually assault, sexually abuse, and have sexual contact with fifteen-year-old Plaintiff Queen Miller in violation of the State of New Jersey and New York laws.

98. By sexually assaulting, sexually abusing, and having sexual contact with fifteen-year-old Plaintiff Queen Miller, Defendant Peterson placed Plaintiff Queen Miller in imminent and reasonable apprehension of harmful and offensive contact.

99. By sexually assaulting, sexually abusing, and having sexual contact with Plaintiff Queen Miller, Defendant Peterson acted to cause repeated unjustified, harmful, and offensive physical contact with Plaintiff Queen Miller.

100. As a result of the preceding, Plaintiff Queen Miller sustained, *inter alia*, assault, battery, severe emotional distress, embarrassment, humiliation, physical pain, and mental anguish, together with shock, fright, and apprehension.

101. Because of the Defendants' multiple assaults, Ms. Miller is entitled to all legal and equitable remedies available under N.J.S.2A:14-2B and section 214-g of New York's civil practice law.

## Count II
### Assault and Battery
### (New York, New Jersey)
### (Plaintiff Queen Miller against Defendant Peterson)

102. Plaintiff repeats and realleges every allegation set forth above as if fully set forth herein.

103. Defendant's actions placed Ms. Miller in the apprehension of imminent harmful and offensive bodily contact.

104. Defendant Peterson touched fifteen-year-old Plaintiff Miller in a harmful and offensive manner. Defendant Peterson did so without privilege or consent from Plaintiff Queen Miller.

105. As a result of the foregoing, Plaintiff Queen Miller sustained, inter alia, assault, battery, severe emotional distress, embarrassment, humiliation, physical pain, and mental anguish, together with shock, fright, and apprehension.

106. Because of Defendant Petersons' multiple sexual assaults and battery, and Defendant corporations' orchestrated coverup of Defendant Peterson's actions, and their retaliatory discharge of Plaintiff Miller from the upward bound program, Plaintiff Miller is entitled to all legal and equitable remedies available under N.J.S.2A:14-2B, and section 214-g of New York's civil practice law.

**Count III**
***Intentional Infliction of Emotional Distress***
***(New York, New Jersey)***
***(Queen Miller against Defendant Peterson)***

107. Plaintiff repeats and realleges every allegation set forth above as if fully set forth herein.

108. The aforementioned conduct was extreme and outrageous and exceeded all reasonable bounds of decency.

109. The conduct was intentional and done for the sole purpose of causing severe emotional distress to Plaintiff Queen Miller.

110. As a result of the foregoing, Plaintiff Queen Miller sustained, *inter alia*, severe emotional distress, embarrassment, humiliation, physical pain, and mental anguish, together with shock, fright, and apprehension.

111. Because of Petersons' multiple acts of Intentional Infliction of Emotional Distress, Plaintiff Queen Miller is entitled to all legal and equitable remedies available under N.J.S.2A:14-2B, and section 214-g of New York's civil practice law.

**Count IV**
***Negligence***
***(New York, New Jersey)***
***(Plaintiff Queen Miller against ALL Defendants***
***in their personal and professional capacities)***

112. Plaintiff repeats and realleges every allegation set forth above as if fully set forth herein.

113. Defendants JCSU, Upward Bound, Gardner, Lowe-Smith, Yancy, Jackson, and Norman are liable for their negligence to Plaintiff Queen Miller.

114. As a direct and proximate result of Defendants JCSU, Upward Bound, Gardner, Lowe-Smith, Yancy, Jackson, and Norman's negligence, Plaintiff Queen Miller has

suffered and continues to suffer severe and permanent psychological, emotional, and physical injuries, shame, humiliation, and the inability to lead an everyday life.

115.     Defendants JCSU, Upward Bound, Gardner, Lowe-Smith, Yancy, Jackson, and Norman's actions and conduct show a reckless or willful disregard for the safety and well-being of Ms. Miller and other children.

116.     As a result of the foregoing, Plaintiff Queen Miller sustained, *inter alia*, severe emotional distress, embarrassment, humiliation, physical Plaintiff Queen Miller pain, and mental anguish, together with shock, fright, and apprehension.

117.     Because of Upward Bounds' multiple acts of Negligence, Plaintiff Queen Miller is entitled to all legal and equitable remedies available under N.J.S.2A:14-2B, section 214-g of New York's civil practice law.


### Count V
### *Breach of Fiduciary Duty*
### *(New York, New Jersey)*
### *(Plaintiff Queen Miller against JCSU, Upward Bound and Individual*
### *Defendants in their personal and professional capacity)*

118.     Plaintiff repeats and realleges every allegation set forth above as if fully set forth herein.

119.     Plaintiff Queen Miller was enrolled in the Upward Bound summer placement program under JCSU's residential care and protection. As a result, JCSU and the individual Defendants were in a position of domination and influence over Plaintiff Queen Miller while participating in its residential program.

120.     As the residential custodian of the minor, Ms. Miller, JCSU had superiority and influence over Ms. Miller.

121.     As a result, JCSU owed a fiduciary duty to Ms. Miller while she was in the program. JCSU reposed confidence in Upward Bound and the individual Defendants. Such confidence was demonstrated in Plaintiff's placement under Upward Bound's residential and national care and protection. As a result, Upward Bound was in a position of domination and influence over Plaintiff while participating in its residential and national program.

122.     As a result of the foregoing, Ms. Miller sustained, *inter alia*, severe emotional distress, embarrassment, humiliation, physical pain, and mental anguish, together with shock, fright, and apprehension.

123.     Because of JCSUs' multiple acts of Breaching their fiduciary duty, Ms. Miller is entitled to all legal and equitable remedies available under N.J.S.2A:14-2B and section 214-g of New York's civil practice law.


## Count VI
### *Breach of Fiduciary Duty*
### *(against Upward Bound, Defendant Lowe-Smith and Defendant Gardner*
### *in their personal and professional capacities)*

124.     Plaintiff repeats and realleges every allegation set forth above as if fully set forth herein.

125.     Ms. Miller and her parent, who enrolled Ms. Miller in the Upward Bound summer program at JCSU, reposed confidence in Upward Bound and individual Defendants. Such confidence was demonstrated in the placement of Ms. Miller under Upward Bound's residential and national care and protection. As a result, Upward Bound was in a position of domination and influence over Ms. Miller while participating in its residential and national program.

126.     As the residential custodian of the minor, Ms. Miller, Upward Bound, and individual Defendant's had superiority and influence over Ms. Miller.

127.     As a result, Upward Bound and the individual Defendant's owed a fiduciary duty to Ms. Miller.

128.     Upward Bound and individual Defendant's breached its fiduciary duty to Ms. Miller in failing to protect her and prevent foreseeable harm by its employee or agent, Defendant Peterson.

129.     As a result of the foregoing, Ms. Miller sustained, *inter alia*, severe emotional distress, embarrassment, humiliation, physical pain, and mental anguish, together with shock, fright, and apprehension.

130.     Because of JCSUs' multiple acts of Breaching their fiduciary duty, Ms. Miller is entitled to all legal and equitable remedies available under N.J.S.2A:14-2B and section 214-g of New York's civil practice law.

## Count VII
### *Gross Negligence*
### *(against JCSU)*

131.     Plaintiff repeats and realleges every allegation set forth above as if fully set forth herein.

132.     In failing to act in response to the risk of child sexual abuse presented by Defendant Peterson, Defendant JCSU demonstrated willful or wanton and reckless disregard of the rights and safety of Ms. Miller.

133.     Defendant JCSU as described in more detail above was grossly negligent for its acts and omissions.

134.     As such, Ms. Miller is entitled to exemplary damages over $75,000.00.

135.     As a result of the foregoing, Ms. Miller sustained, *inter alia*, severe emotional distress, embarrassment, humiliation, physical pain, and mental anguish, together with shock, fright, and apprehension.

136.     Because of JCSUs' multiple acts of Gross Negligence, Ms. Miller is entitled to all legal and equitable remedies available under N.J.S.2A:14-2B.


## Count VIII
### *Gross Negligence*
### *(against Upward Bound, and Individual Defendant's*
### *in their personal and professional capacities)*

137.     Plaintiff repeats and realleges every allegation set forth above as if fully set forth herein.

138.     In failing to act in response to the risk of child sexual abuse presented by Defendant Peterson, Defendant Upward Bound, and individual Defendant's demonstrated willful or wanton and reckless disregard of the rights and safety of Ms. Miller.

139.     Defendant Upward Bound, and individual Defendant's described in more detail above, was grossly negligent for its acts and omissions.

140.     As such, Ms. Miller is entitled to exemplary damages in excess of $75,000.00.

**Count IX**
*NJLAD, N.J.S.A 10:5-12(e), et seq. and N.J.S.2A:14-2B*
*Aiding and Abetting*
*(against individual Defendants*
*in their personal and professional capacities)*

141.    Plaintiff repeats and realleges each allegation set forth above as if fully set forth herein.

142.    As a result of the foregoing, the individual Defendants aided, abetted, incited, compelled and coerced acts forbidden under the New Jersey Law Against Discrimination, §10:5-12(e) *et seq.*

143.    NJLAD permits the imposition of individual liability on an employee and employers who have aided or abetted barred acts. A plaintiff claiming the person is liable for discrimination under NJLAD must show that: (1) party whom defendant aids must perform a wrongful act that causes an injury; (2) defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he assists; and (3) defendant must knowingly and substantially assist the principal violation.

144.    As the Administrators for Upward Bound and JCSU, Individual Defendant's aided and abetted their employee, Defendant Peterson, when they deliberately covered up, deleted, retaliated against, and expelled Ms. Miller out of the Upward Bound program after they discovered that Defendant Peterson groomed and raped Ms. Miller throughout the summer of 1998 in New York and New Jersey. As the Administrators of the Upward Bound Program and JCSU, Individual Defendant knew or should have known their acts were illegal and tortious when they harmed Ms. Miller. As evidenced in Defendant Peterson's employee file, Defendant Lowe-Smith and Defendant Gardner were alerted by counselors and other students in real-time about the sexual trauma visited upon Ms. Miller by Defendant Peterson. Subsequently, Individual Defendant's

145.    As a result of the foregoing, Ms. Miller sustained, *inter alia*, severe emotional distress, embarrassment, humiliation, physical pain, and mental anguish, together with shock, fright, and apprehension.

146.    Because of individual Defendant's multiple acts of aiding and abetting, Ms. Miller is entitled to all legal and equitable remedies available under N.J.S.2A:14-2B and N.J.S.A 10:5-12(e).

## JURY DEMAND

Ms. Miller demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Ms. Miller hereby demands judgment against Defendant's on each cause of action as follows:

a. Awarding compensatory damages in an amount of $10,000,000.00;
b. Awarding punitive damages in an amount of $10,000,000.00;
c. Awarding costs and fees of this action, including attorneys' fees to the extent permitted by law;
d. Awarding prejudgment interest to the extent permitted by law; and
e. Awarding such other and further relief as to this Court may seem just and proper.

Date: August 13, 2021

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Tel: 347-342-7432
TBlackburn@TABlackburnlaw.com
Attorney for Plaintiff Queen Miller